NEW-YORK PRACTICE REPORTS. 277

Smith agt. The New-York and New-Haven Railroad Company.

## SUPREME COURT.

CHARLES J. SMITH, Appellant agt. THE NEW-YORK AND NEW-HAVEN RAILROAD COMPANY, Respondents.

A cause of action against a common carrier for negligence in not delivering specific articles of personal property, is *assignable*.

*Kings General Term, October,* 1857.

*Present:* S. B. STRONG, EMOTT *and* BIRDSEYE, *Justices.*

THIS action was commenced by summons issued by a justice of the peace for the county of Westchester, on the 26th day of January, 1856, returnable February 8th, 1856, at which time the parties appeared, and the plaintiff filed his complaint in writing against the defendants as common carriers, for negligence in not delivering to one Sanford Hallock, at Mount Vernon, in said county, four barrels of flour and one barrel of crackers, of the value of $48.50, with assignment of claim to the plaintiff.

To which complaint the defendants demurred orally: 1st. That the complaint contained no cause of action. 2d. That the said claim was not assignable.

February 23d, 1856. The demurrer was sustained, and judgment was entered for the defendants. January 10th, 1857, the said judgment was reversed by the county court of Westchester county. And an appeal from that judgment was taken to the general term.

P. L. McCLELAN, *for appellant.*

R. H. COLES and CYRUS LAWTON, *for respondents.*

By the court—EMOTT, Justice. In *McKee* agt. *Judd,* (2 *Kern.* 622,) the court of appeals held, that where goods had been wrongfully taken and converted, and the owner afterwards having become insolvent, made a general assignment of all his property and things in action for the benefit of his creditors,

the right of action for damages passed, and a suit could be maintained for the conversion by the assignee, and since the Code in his own name. In *Zabriskie* agt. *Smith*, (3 *Kern*. 322,) the same court held that a right of action for damages sustained in consequence of a false representation as to the credit or solvency of a third person, was not assignable. The learned judge who delivered the opinion in the latter case, declares the former decision to be good law, and that the court do not intend to overrule it. It is evident, however, that the present action must come within the decision in *McKee* agt. *Judd*. Actions and rights of action, for the conversion of personal property, are distinguished from actions for deceit and false representations, it seems, because the former are considered as more properly in the language of the supreme court of Pennsylvania in *O'Donnell* agt. *Seybert*, (13 *Serg. & R*. 54,) actions " of property." That is, I suppose, they are actions relating to and founded on the ownership of certain definite articles of property. It is quite obvious, I think, that an action against a common carrier for not transporting specific articles committed to his charge, comes as clearly within this category as an action for taking or detaining such property. If the defendants in this case were charged with absolutely converting this property to their own use, the party who had sustained the injury could assign his right of action for it by the express authority of *McKee* agt. *Judd*. Would it not be absurd to say that an equally entire loss of the property to the owner, occasioned by the wilful or negligent conduct of the defendants, while intrusted with the property as carriers, will create so different a kind of demand or cause of action, that it cannot be transferred or assigned?

In *Zabriskie* agt. *Smith*, the learned judge who delivered the prevailing opinion, adopted a test of the assignability of causes in action, which, I think, will clearly sustain the present suit. The rule by which the cause of action in that case was held not to be assignable, was that it would not survive to the personal representatives of a party in case of his death. The same test had been applied in several previous cases. (*Raymond*

agt. *Fitch*, 2 *Crompt., Mees. & Welsb.* 588; *The People* agt. *Tioga C. P.*, 19 *Wend.* 76; *Comeggs* agt. *Vase*, 1 *Pet.* 213.)

It might be contended that such a case as the present, is clearly within the equity of the statute, giving to executors, &c., actions of trespass against any person who shall have wasted, destroyed, taken or carried away, or converted to his own use the goods of the deceased. (2 *R. S.* 114, § 4.) But there is another statute which was not adverted to by the court in the case in 3 *Kernan*, but by which such a cause of action as the respondent relies upon in this case, will survive in case of a death of a party injured. By 2 *R. S.* 447, § 1, "for wrongs done to the property, rights or interests of another, for which an action might be maintained against the wrongdoer, such actions may be brought by the person injured, or after his death by his executors or administrators, against such wrongdoer, and after his death against his executors or administrators, in the same manner and with the like effect in all respects, as actions founded on contracts." There is no doubt that the rule of the common law was otherwise, as stated in *Zabriskie* agt. *Smith*. But I am not able to see any greater doubt that this statute was intended to change the rule of the common law, and did establish a different rule as to all cases but those of mere *personal injuries* not affecting property, rights or interests of another as such. The wrong need not be done to any specific property if it affect a *right* or an *interest*. These are terms of wide signification. They might and probably would include the right of personal security and of the enjoyment of character. So the revisers and the legislators seem to have understood and intended. The revisers, in their note to this and the next section, (3 *R. S.* 781, *2d ed.*,) say : " The maxim that a personal action dies with the person, has long ceased to be true. Legislatures and courts have steadily and. gradually enlarged the liabilities of executors ; but there still remain some cases unprovided for. The instance of overflowing land, of deceits and false representations, of violation of duty by public officers, as sheriffs for escapes, &c., and many others, might be mentioned in which injured parties are now

remediless. The exceptions, it is believed, are all that should be made. The general object of all law being the protection of those under its control, by affording the means of redressing their wrongs, it is not perceived how the death of the wrong-doer should exempt his property from the burden of that re-dress." The intention is clearly disclosed here to abolish sub-stantially the rule *actio personalis moritur cum persona,* or at least to narrow its application to mere personal torts. That this was the purpose of the revisers, and that it was adopted by the legislature, is, I think, plain from section 2 of the same article which immediately succeeds that which I have quoted, and contains the exceptions referred to in the revisers' note. It declares that the preceding section, "shall not extend to actions for slander, for libel, or to actions of assault and bat-tery, or false imprisonment, nor to actions on the case for in-juries to the person." These exceptions, which are all that were intended or made, show how far the legislature meant to go in preventing the abatement of causes of action. If they do not preserve a right of action for a deceit or false represen-tation, which is not the question here, and which probably was not considered by the court of appeals in *Zabriskie* agt. *Smith,* since these sections were not adverted to, they must certainly continue a right of action for a neglect of duty in the custody or the conveyance of property. I cannot see any question that such a right of action is within the purview of the first section and not within the exceptions in the second. If this be so, and if the power to transmit to personal representatives and to assign are convertible propositions, as has been said by high authority, then the action was properly brought.

The justice was wrong in sustaining the demurrer, and the judgment of the county court reversing his decision must be affirmed.