## JORDAN *v.* GILLEN.

Actions for injuries to the person, which die with the person, are not assignable before judgment.

But an action for unliquidated damages, founded either on the entire destruction, or conversion, or partial injury to personal property, which survives, is capable of assignment, and the assignment, when executed in good faith, for adequate consideration, and upon due notice to the defendants, and all parties in interest, will bind the parties thereto, and such as have knowledge thereof.

Such assignment may be by parol agreement; and when fairly executed between attorney and client will not be void, as being champertous, or against public policy.

It is for the jury to determine upon the sufficiency of the assignment and notice; and if the same are good and valid, the law will protect the assignee from any subsequent wrongful settlement by the original parties.

TRESPASS for two lambs, the plaintiff's property, and alleged to have been taken, carried off and converted to their own use by the defendants. The case was tried before the justice upon the plea of the general issue, and the defendants appealed from his decision to this court, the action being entered here April term, 1860. At April term, 1862, the defendants pleaded *puis darrein continuance;* an accord and satisfaction in bar of the further maintenance of the suit. The plaintiff replied an assignment of the cause to Albert Barker, his attorney, and notice thereof to the defendants before the accord. Issue was joined on the assignment and notice.

The plaintiff's evidence tended to show that he was indebted to said Barker in a large amount for fees and advancements, in several other cases as well as this; that the plaintiff was worthless, but had agreed to make Mr. Barker some shingles; and in March, 1861, Mr. Barker, upon going to the plaintiff's house for the shingles, and finding none, then told him he should prosecute this case no further unless he paid or secured him in some way. The plaintiff and said Barker expected this case would be settled before trial, and the plaintiff then told said Barker if he would proceed with the suit he would assign the whole suit, damages and costs to him, and did verbally assign the same to said Barker, to which the latter agreed. Since then the cause has been assumed and prosecuted by Mr. Barker, and he filed his bond for costs at the April term, 1862. At the time of the foregoing alleged assignment, the plaintiff further promised to furnish the witnesses on his side, in case the action was tried, and that Mr. Barker should have the whole avails of the suit; and the plaintiff also promised not to settle the action with the defendants. Mr. Barker testified that he gave the defendants notice that the suit was his, that they must not settle with the plaintiff, and that if they did they would have to pay him again — before the alleged accord and satisfaction. The alleged assignment was wholly verbal, and so was the notice; both of which were denied by the defendants.

The defendants' counsel claimed that the plaintiff's evidence did not in law constitute an assignment; that a mere right, *ad litem,* for unliquidated damages, founded on a tort, can not lawfully be assigned; that said alleged assignment was against public policy, champertous, and void.

The defendants also offered in evidence the said Jordan's admission, made since the alleged assignment, and respecting the same, to which Mr. Barker objected, and the same was held incompetent.

The parties agreed to the foregoing facts, in order that such law questions as arose thereon might be heard and determined at the law term.

*Barker*, for the plaintiff.

*Benton & Ray*, for the defendants.

Nesmith, J.   Under the pleadings and facts of this case several questions are raised for the consideration of the court.   The plaintiff's attorney sets up a legal assignment of the rights of action to himself, executed upon sufficient consideration from his client, of which the defendants had due notice, prior to the pretended settlement of the suit by the parties.   To the validity of the said assignment the defendants allege sundry exceptions.

1. They allege that said assignment was against public policy, champertous, and void.   Maintenance, which includes champerty, is defined to be an unlawful taking in hand, or upholding of quarrels and sides, to the disturbance and hindrance of common right; 3 Greenl. Ev., sec. 180; or, in the language of Lord *Abinger*, in *Fendon* v. *Parker*, 11 M. & W. 675, it may be confined to cases where a man improperly, and for the purpose of stirring up litigation and strife, encourages others to bring actions, or to make defenses, which they have no right to make.   And to show what might not be maintenance, he continues: " If a man were to see a poor person in the street, oppressed and abused, and without the means of obtaining redress, and furnished him with money, or employed an attorney to obtain redress for his wrongs, it would require a very strong argument to convince me that that man could be said to be stirring up strife and litigation, and to be guilty of the crime of maintenance.   I am not prepared to say that, in modern times, courts of justice ought to come to that conclusion."   So the defendant, in his defense to the charge of maintenance, or champerty, may show that the act was justifiable; as, that he already had an interest in the suit in which he advanced his money, though it were but a contingent interest, or that he assisted the party because he was a poor man.   3 Greenl. Ev., sec. 182; *Perrin* v. *Dunn*, 3 Johns. Ch. 508.

The attorney here may also show that the consideration of the assignment was the discharge, in part or in full, of a precedent debt, due from his client to himself.   " A grant of a part of a thing in suit, made in consideration of a precedent debt, is not within the meaning of the statute against champerty."   1 Bac. Ab. 575.   In *Arden* v. *Patterson*, 5 Johns. Ch. 50, a leading case in this country on this subject, the chancellor says: "Nor was the assignment of the suit to the plaintiff made in satisfaction of a precedent debt due *bonâ fide* to him."

*Story*, J., while admitting the law against acts of champerty and

maintenance to be in force here to a limited extent, says a party may purchase by assignment the whole interest of another in a contract, or security, or other property, which is in litigation, provided there be nothing in the contract which savors of maintenance; that is, provided he does not undertake to pay any costs, or make any advances, beyond the mere support of the exclusive interest which he has so acquired. 2 Story Eq., sec. 1050. In *Shapleigh* v. *Bellows*, 4 N. H. 355, *Richardson*, J., says: "There is a general understanding between attorneys and their clients that the former shall retain their fees and disbursements out of the sum that may be recovered of the opposite party; and it is not uncommon that attorneys commence for poor people actions and make advances of money necessary to the prosecution of the suit, upon the credit of the cause. Thus a person in indigent circumstances is enabled to obtain justice, in cases where, without such aid, he would be unable to enforce a just claim." This doctrine was recognized in *Christie* v. *Sawyer*, 44 N. H. 298.

If the contract in this instance can be sustained on all other grounds, we see no reason for setting it aside on this exception.

2. Another question is presented here, whether a mere right *ad litem* for unliquidated damages, founded on a tort, can lawfully be assigned? This question has recently been decided in the affirmative in the State of New-York. There it has been held that merely personal actions, which die with the person, are not assignable; but torts for taking and converting personal property, or for injury to personal property; and it seems, generally, all such rights of action for a tort as would survive to the personal representatives, may be assigned, so as to pass an interest to an assignee, which he can now assert under the code in a civil action in his own name, as he might formerly at common law assert in the name of the assignor. *Butler* v. *Railroad*, 22 Barb. 110; *People* v. *Hudson River Road*, 4 Duer 74; 2 Kern. 622; 1 E. D. Smith 425. So a right of action against a common carrier for negligence in not delivering goods, may be assigned. *Smith* v. *Railroad*, 28 Barb. 608; *Waldron* v. *Willard*, 3 E. D. Smith 488. The aforesaid decisions are found in New-York, where a statute exists restraining offenses partaking of the nature of maintenance or champerty. In Pennsylvania it has been recently settled, that an action for unliquidated damages, sounding in tort, before a verdict, is not capable of assignment, so far as respects the rights of third persons, but as between attorney and client an agreement to assign the whole, or part of a future verdict, is binding, and, when founded on a sufficient consideration, will be enforced. 20 U. S. Dig. 100. So an agreement between attorney and client, that the former should have $100 for his services out of the verdict in an action for unliquidated damages arising from a tort, operates as an equitable assignment to the extent of the sum recovered, and is good against an *attaching* creditor of the client. *Patten* v. *Wilson*, 34 Penn. 299. In *North* v. *Turner*, 9 S. & R. 244, the action was trespass *de bonis*, and it was held to be assignable under the law of Pennsylvania. The case, *Gardner* v. *Adams*, 12 Wend. 297, quoted by the defendant's counsel, has recently been overruled in

the State of New-York by *Hall* v. *Robertson*, 2 Comst. 293 ; 1 Pars. on Cont. 195, note.

Substantial specific property in controversy in an action of replevin, may be the subject of an assignment. *Taylor* v. *Galland*, 3 Iowa 17. In *Rice* v. *Stone*, 1 Allen 566, it was settled by the court in Massachusetts, that a claim for injuries to the person is not assignable before final judgment ; but the court say : " At the present day claims for property and for torts done to property are to be regarded as assignable, especially in bankruptcy and insolvency. A claim for the tortious conversion or destruction of property is based on a right to property which has a certain value. A claim for an injury to the property which is less than a conversion or destruction of it, is of the same character."

Without reference to other authorities, it will be found that the rigid rules of the ancient common law upon this subject have been constantly relaxing ; that the law allowing the assignment of property in the form of notes, bills, &c., and choses in action, has been progressive, and is measured by the wants of trade and increased commerce, embracing new objects from time to time ; at one era hindering the transfer of negotiable paper ; at another period confined to that alone ; again, permitting the transfer of choses in action, and other rights to property, regulated by the salutary rule, that if there be sufficient evidence to impeach the *bonâ fides* of a contract, then the assignee may be reasonably required to give full and adequate proof of the consideration ; and when thus properly executed, and for a legitimate purpose, the assignor will not be allowed to impeach the title of the assignee, whether the assignment be good at law, or only in equity ; *Blinn* v. *Pierce*, 20 Vt. 25 ; *Eaton* v. *Mellus*, 7 Gray 566 ; and the court properly rejected the testimony offered by an assignor, tending to impeach, by his subsequent declarations, the title of the assignee. *Hurlburt* v. *Wheeler*, 40 N. H. 73 ; *Pomfret* v. *Recroft*, 1 Saund. 322 ; *Dexter* v. *Manly*, 4 Cush. 24.

Exception is taken by the defendant also that there was no delivery here ; but it is an elementary principle that where a vendee is in possession no delivery is necessary. Hill. on Sales 101 ; *Allen* v. *Smith*, 10 Mass. 308 ; *Macomber* v. *Parker*, 13 Pick. 175 ; *Ludlow* v. *Hurd*, 19 Johns. 218.

Exception is also made that the contract was not reduced to writing. This point was considered and decided in *Thompson* v. *Emery*, 27 N. H. 272 ; *Saxton* v. *Fleet*, 2 Hilton (N. Y.) 477. A delivery under a parol agreement is a sufficient assignment of a note, bill, judgment, execution, or other chose in action. The numerous authorities on this point are collected in Hill. on Sales 441, and note.

No rights of creditors intervened here. The only material inquiry is, whether the attorney and client, in good faith and upon adequate consideration, made and completed a contract between themselves, which they can now explain to the satisfaction of the jury. No particular form of words, or writing, nor sealed instrument, is required to effectuate the true intent of the parties. If this intent can be ascertained, it should be carried out in good faith.

The defendants are, however, to have notice of the assignment, to

bind them. It is enough that the debtor be in good faith informed of the assignment, so that he has no reason to doubt it. Direct and positive notice of the assignment will not always be insisted on. A party will be bound who has such knowledge of facts and circumstances as ought to put him on inquiry. 1 Pars. on Cont. 197. The assignee of a suit or decree has done every thing which can reasonably be required of him, when he has caused the "entry to his use" to be made on the court docket where the action is pending, and he does not lose his rights by omitting to cause such entry to be made on every docket on which the suit is entered. *Gill* v. *Claggett*, 4 Md. Ch. 153; Hill. on Sales 451. Whether there was due notice to the defendants here of the assignment, previous to the settlement, is one of the facts for the jury to find. In the case, *Eastman* v. *Wright*, 6 Pick. 323, the court say, that in England, where a nominal plaintiff, or one of several plaintiffs, releases an action, in fraud of the party in interest, the court directly interfere, and set aside the release. Such we understand to be our practice, where there is no doubt about the facts. The court, in the preceding case, say the release may be avoided if fraudulent, and the question of fraud can only be tried by the jury. *Duncklee* v. *Greenfield*, 23 N. H. 255; *Sanborn* v. *Little*, 3 N. H. 539; *McCullum* v. *Coxe*, 1 Dall. 139.

Under the pleadings joined by the parties, and guided by the aforesaid suggestions of the court, it is for the jury to determine upon the existence of the assignment, its extent and meaning, and all other matters involved in the issue made up. The case must, therefore, be discharged, and stand for the jury.