Max Bloom, J.
Plaintiff (Home) moves to dismiss the counterclaim. The facts giving rise to the claim and counterclaim are substantially undisputed.
On October 6, 1968, one Thomas Dyrnes, while a passenger in a motor vehicle owned by one Czapala, was struck by a truck owned by Equipment Rental Service, Inc., and leased to Consolidated Edison Company.
The injuries suffered by Dyrnes were most grievous. Suit was brought against Equipment Rental, Con Ed, George Torro, the driver of the truck and Czapala and resulted in a verdict of $1,250,000 in favor of Dyrnes. As against Czapala, the verdict was set aside on jurisdictional grounds. Judgment was entered against the other defendants in that action in the amount of the verdict, together with interest and costs.
Equipment Rental was insured by defendant (Royal) for the sum of $500,000. That policy contained the usual clauses requiring the insurer to defend on behalf of its insured and obligating Royal to pay any judgment, recovered against Equipment Rental not exceeding the amount of the policy, together with interest and costs. Con Ed was covered by an excess policy issued by Home in the amount of $1,500,000.
Appeal was taken by Royal from the judgment and during the pendency thereof, there were negotiations between Royal and counsel for Dyrnes looking toward settlement of the judgment. In the interim, in November 30, 1970 Home wrote Royal charging it with bad faith in the handling of the Dyrnes action *739 by refusing to settle that case within its policy limits and with negligence in the defense. The letter asserted that Home would hold Boyal responsible for any losses accruing to it as a consequence. On January 6, 1971, January 29, 1971, February 8, 1971 and February 18, 1971, Royal wrote Home that it was negotiating with Dyrnes’ counsel, looking to a settlement of the major action. In the first two letters the figure of $900,000 was fixed as a settlement figure acceptable to Dyrnes ’ counsel. The third letter fixed a sum of $750,000 to $800,000 and the last letter fixed a possible settlement figure between $700,000 and $800,000. In each of these letters Royal insisted that the amount of its contribution to this settlement be limited to $500,000 with Home paying the balance. The last letter, which was sent after this action had been commenced, provided that such contribution would be without prejudice to Home’s rights arising out of that action.
Subsequently, the Appellate Division modified the Dyrnes judgment by reducing it to the sum of $700,000 (Dyrnes v. Consolidated Edison Co., 36 A D 2d 766). Judgment was thereupon entered for the sum of $700,000, together with interest in the sum of $48,844.15 and costs of $267.38, totaling in all the sum of $749,111.53. This judgment was paid, with Home contributing the sum of $200,000 and Royal contributing the balance of $549,111.53.
Home brings this action to recover the sum contributed by it to payment of the judgment asserting that Royal acted negligently and in bad faith in refusing reasonably to negotiate a settlement within the limits of the policy issued by it to Equipment Rental. Royal has counterclaimed alleging that Home’s action in refusing to concur in settlement arrangements in the Dyrnes case was in bad faith and that, as a consequence, it has been damaged in the sum of $100,000.
The development of the doctrine which requires an insurer to negotiate, in good faith, a claim asserted against its assured (Harris v. Standard Acc. & Ins. Co., 191 F. Supp. 538; Brown v. United States Fid. & Guar. Co., 314 F. 2d 675; Young v. American Cas. Co. of Reading, Pa., 416 F. 2d 906; Brockstein v. Nationwide Mut. Ins. Co., 417 F. 2d 703; Gordon v. Nationwide Mut. Ins. Co., 37 A D 2d 265; cf. Matter of Kreloff v. Mendez, 65 Misc 2d 692; Henegan v. Merchants Mut. Ins. Co., 31 A D 2d 12), so ably briefed by counsel, may be of more than passing interest when considered in connection with the complaint; it has little application to the counterclaim.
Home, once it paid so much of Con Ed’s obligation under the judgment as it was required to do by its insurance contract, *740 became the equitable assignee or subrogee of Con Ed’s rights with respect thereto (American Fid. & Cas. Co. v. All Amer. Bus Limes, 179 F. 2d 7; Fidelity Gen. Ins. Co. v. Aetna Ins. Co., 27 A D 2d 932). In this case, via-a-vis Boyal, it is an insured— not an insurer — and its rights and obligations must be viewed in that context. Just as Boyal owed Home the duty of negotiating in good faith so Home owed Boyal the contractual duty of co-operation and the common-law duty to mitigate damages.
Boyal, in the negotiations which ensued between the initial judgment and the modification on appeal, was negotiating with Home’s money. Moreover, it sought, as part of those negotiations to exonerate itself from a portion of the burden imposed by the judgment — the responsibility to pay interest and costs. By limiting its own liability to a sum less than that fixed under the policy and judgment it was, in effect, seeking to impose that burden upon Home. To assert that Home, by refusing to accept a settlement which diminished Boyal’s contribution to the total amount payable, was guilty of a failure to co-operate or a failure to mitigate damages is patently without merit.
True it is that the pursuit of the appeal to its final conclusion placed an additional cost burden upon Boyal. That, however, was an obligation which flowed from its responsibility to represent its assured in good faith (Fidelity Gen. Ins. Co. v. Aetna Ins. Co., supra; Kaste v. Hartford Acc. & Ind. Co., 5 A D 2d 203). Moreover, it is not inappropriate to note that Boyal had a very personal interest in the outcome of the appeal. Under the terms of the original judgment Home was required to pay $750,000 to Dyrnes. Home had notified Boyal that, to the extent that it was required to pay any part of the judgment, it would look to Boyal for reimbursement because of the alleged breach by Boyal of its duty to seek, in good faith, a disposition of the Dyrnes suit within the limits of Boyal’s policy. To the extent that it diminished the amount ultimately payable to Dyrnes, Boyal limited its own potential liability. Good business sense and legal obligation here existed, arm in arm.
True it is that a settlement in the total sum of $700,000, if such were within the realm of possibility, would have mitigated the total damages by eliminating the substantial interest and costs and by rendering unnecessary part of the costs of appeal. However, Boyal had no right to insist, as it did, this benefit accrue solely to it. By so doing Boyal forfeited any claim that Home had defaulted either in its obligation to co-operate or to mitigate damages.
*741 In these circumstances it cannot be said that Royal’s counterclaim sets forth facts which may be the predicate for affirmative relief. The motion to strike the counterclaim is granted.